IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHAD W. WYNN,                                    )
               Petitioner,                )
                                     )
       vs.                                       )        Civil Action No. 2:08-114
                                     )
MR. ROZUM, Superintendent, et al.,               )
               Respondents.              )

<u>MEMORANDUM OPINION</u>

Petitioner, Chad W. Wynn, who is currently incarcerated at the State Correctional Institution at Somerset, Pennsylvania, brings this petition for a writ of habeas corpus in accordance with 28 U.S.C. § 2254, challenging his convictions at No. CC No. 578 Criminal Sessions 2000 on charges of murder in the third degree and aggravated assault and the sentence of imprisonment of twenty to forty years, imposed on October 17, 2002 in the Court of Common Pleas of Greene County, Pennsylvania.  The charges arose out of the December 15, 2000 death of his two-month-old daughter, Destiny.

For the reasons that follow, Petitioner's claims that the prosecution engaged in misconduct (claim III), that trial counsel was ineffective for failing to suppress the testimony of Sue Virgili (claim V), that trial counsel was ineffective for failing to call certain witnesses (claim VI), that trial counsel was ineffective for failing to go over the appeal process and whether or not he wanted to appeal (claim VIII), that trial counsel was ineffective for failing to preserve an issue for appeal (claim IX) and that trial counsel was ineffective for failing to argue that the sentencing court abused its discretion when the sentence imposed was harsh (claim X) are unexhausted and procedurally defaulted and therefore barred from review.  His claim that the trial court committed error in admitting the inflammatory photos (claim IV) is exhausted but

does not raise an issue cognizable in federal habeas corpus.  His remaining claims are as follows: trial counsel was ineffective for failing to properly raise the issue concerning the improper presentation of the photographs of the deceased (claim I), trial counsel was ineffective for failing to object to testimony that he had been abused and had anger management problems and/or by opening the door to such testimony (claim II), and the trial court erred in precluding him from cross-examining his wife concerning the content of her website that contradicted her testimony that she did not drink alcohol, did not smoke marijuana, was not known by an alias and her portrayal that she was a modest woman (claim VII).  They will be denied on the merits.

Procedural History

By virtue of the criminal complaint filed by Trooper Raymond Stewart of the Pennsylvania State Police, as well as the amended information filed by the Commonwealth on January 22, 2002, Petitioner was charged with homicide and aggravated assault in the December 15, 2000 death of his infant daughter, Destiny.  On August 20, 2002, Petitioner proceeded to a jury trial, represented by Greene County Chief Public Defender Harry J. Cancelmi, Jr. and court appointed counsel John Knorr.  On August 24, 2002, the jury found him guilty of third-degree murder and aggravated assault, but not guilty of first-degree murder.  He was sentenced by President Judge H. Terry Grimes on October 17, 2002 to a term of incarceration of twenty to forty years on the third-degree murder conviction with no additional penalty for aggravated assault.

Petitioner, through Attorney Knorr, filed a direct appeal from judgment of sentence on November 4, 2002, which was docketed at No. 2028 WDA 2002.  He raised the following issues:

I. Whether the court erred by precluding [him] from cross-examining Shanea

2

Wynn concerning the content of her pornographic internet website that contradicted Mrs. Wynn's testimony that she did not drink alcohol, did not smoke marijuana, was not known by an alias, and her portrayal that she was a modest woman?

II. Whether the court erred in admitting into evidence post-mortem photographs of Destiny Wynn taken both in the hospital and at the time of the autopsy?

(Super. Ct. Br. at 4.)

On May 14, 2004, the Superior Court affirmed the judgment of sentence.  The opinion was published as Commonwealth v. Wynn, 850 A.2d 730 (Pa. Super. 2004).  The court addressed the two listed issues on the merits.  However, the court refused to consider another claim–that the manner in which the photographs were presented was objectionable–because counsel failed to raise this issue in the statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).  Id. at 735-36.

On June 14, 2004, Petitioner, through Attorney Cancelmi, filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was docketed at No. 321 WAL 2004.  He raised the following issue:

Did the trial judge err in disallowing the cross-examination of the seventeen-year old mother [SW] of the deceased two-month old daughter [DW] about the content of her website that identified her alias as "bitch_04u", and her profile as "lous baby", her hobbies as "drinking" and contained a photographic album of an adult nude male juxtaposed with baby pictures, endorsement of the use of marijuana, a stick figure cartoon of a man having sex with a woman having oral sex with another man, among other links to the mother and the deceased child, after the Commonwealth introduced a sentimental photograph of the child on the lap of Santa Claus, examined the mother on direct about her alleged diligent care, her motherly affection for the child, her sobriety, and her modesty, in contrast to the alleged hard-hearted actions of the defendant on the night the child was killed?

(Pet. Allowance Appeal at 5.)

On October 26, 2004, the Supreme Court of Pennsylvania entered an order denying the petition for allowance of appeal.  Commonwealth v. Wynn, 862 A.2d 1255 (Pa. 2004).

3

On July 14, 2005, Petitioner filed a pro se petition for collateral review pursuant to the Pennsylvania Post Conviction Relief Act, 42 Pa. C.S. §§ 9541-46 (PCRA), in the Court of Common Pleas of Greene County.  Thereafter, Attorney Thomas N. Farrell was appointed to represent him and Attorney Farrell filed an amended PCRA petition on his behalf on February 27, 2006.  The amended petition raised the following issues:

> 1. Counsel gave ineffective assistance for failing to properly raise the issue concerning the improper presentation of the photographs of the deceased child.
>
> 2. Counsel gave ineffective assistance in allowing or failing to object to testimony that Mr. Wynn had been abused as a child and had anger management [problems]. The testimony was highly prejudicial and not probative.  Counsel gave ineffective assistance in failing to object to the testimony.  In the alternative, counsel gave ineffective assistance in "opening the door" to allow such testimony.
>
> 3. Counsel gave ineffective assistance for failing to suppress the testimony of Sue Virgili, who interviewed Mr. Wynn while he was in custody but failed to inform Mr. Wynn that his statement would be used against him and that he had a right to an attorney.  Indeed, Ms. Virgili was an agent of the Commonwealth who was investigating a child abuse case and was actually ordered by the Court to testify against Mr. Wynn.
>
> 4. Counsel gave ineffective assistance for failing to object at trial and to present on appeal the fact that an instruction was given concerning the use of a deadly weapon by Mr. Wynn.
>
> 5. Counsel gave ineffective assistance for failing to call the following witnesses at trial: a) Paul Ames, b) Jerome Buyny, c) Evalena Simmons and d) Sterling Steve Simmons.
>
> 6. Counsel gave ineffective assistance for failing to argue that the sentencing court abused its discretion when the sentence imposed was harsh.

(Am. PCRA Pet. at 3) (citations omitted).[1]

---

[1]     In Judge Grimes's opinion, only five issues are listed (the fourth issue is missing), the third issue is phrased in terms of counsel's failure to move to suppress Petitioner's confession (although it relates to the statement he made to Sue Virgili) and only Evalena Simmons is listed as a witness counsel failed to call.

Judge Grimes held a hearing on the petition on March 6, 2006.  On March 30, 2006 Attorney Farrell filed a brief in support of the petition.  The petition was denied on May 9, 2006.

Petitioner, through Attorney Farrell, filed an appeal in the Pennsylvania Superior Court on June 2, 2006, which was docketed at No. 1088 WDA 2006.  He presented the following issues:

> I. Whether counsel gave ineffective assistance for failing to properly preserve an issue for appeal?
>
> 2. Whether [] counsel gave ineffective assistance for failing to object to testimony that Mr. Wynn had been abused and had anger management problems?

(PCRA Appeal at 4.)  On January 29, 2007, the Pennsylvania Superior Court denied the appeal.

Petitioner, still proceeding through Attorney Farrell, filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was docketed at No. 97 WAL 2007.  He presented the following issues:

> 1. Whether counsel gave ineffective assistance for failing to properly preserve an issue for appeal?
>
> 2. Whether [] counsel gave ineffective assistance for failing to object to testimony that Mr. Wynn had been abused and had anger management problems?

(Pet. Allowance Appeal at 4.)  The Pennsylvania Supreme Court entered an order denying the petition for allowance of appeal of Petitioner's PCRA petition on October 4, 2007.

Claims in Federal Habeas Petition

Petitioner filed this federal habeas corpus petition on February 5, 2008.  He raises the following claims in the petition:

> I. Counsel was ineffective for failing to properly raise the issue concerning the improper presentation of the photographs of the deceased.
>
> II. Counsel was ineffective for failing to object to testimony that Mr. Wynn had been abused and had anger management problems. Counsel was ineffective by

5

"opening the door" to allow such testimony.

III. District Attorney, Ms. Fox and Assistant District Attorney, Ms. Chambers, engaged in prosecutorial misconduct by pursuing no other possibility of suspects, with prejudiced and biased opinions and/or feelings. Also, failure to secure crime scene appropriately prior to contamination.

IV. Trial Judge erred in numerous situations, which allowed in so doing to enter into and on the record of inflam[m]atory photos, biased and prejudicial to the defendant.

V. Counsel was ineffective by failing to suppress the testimony of Sue Virgili, who interviewed Mr. Wynn while he was in custody but failed to inform Mr. Wynn that he had a right to an attorney. Indeed, Ms. Virgili was an agent of the Commonwealth who was investigating an abuse case and was actually ordered by the court to testify against Mr. Wynn.

VI. Counsel was ineffective by failing to call the following witnesses at [trial]: (1) Evalena Simmons, (2) Steve Simmons, (3) Private Investigator, (4) Paula Ames, and let alone Medical Professionals to refute or rebut Dr. Pierces direct testimony of possible doubt of cause of injury and death.

VII. Trial Judge erred by precluding Mr. Wynn from cross-examining Mrs. Wynn concerning the content of her pornographic internet website that contradicted Mrs. Wynn's testimony that she did not drink alcohol, did not smoke marijuana, was not known by an alias, and her portrayal that she was a modest woman.

VIII. Counsel was ineffective for failing to go over the appeal process and whether or not Mr. Wynn wanted to appeal and on what grounds.

IX. Counsel was ineffective for failing to properly preserve [an] issue for appeal.

X. Counsel was ineffective for failing to argue that the sentencing Court abused its discretion when the sentence imposed was harsh.

(Pet. ¶ 13.)

Respondent filed an answer on April 18, 2008, in which it argued that some of the claims (claims III, V, VI, VIII, IX and X) were unexhausted and the remaining claims (claims I, II, IV and VII), to the extent that they raised federal issues rather than state law issues, should be denied on the merits  (Docket No. 9).  Petitioner filed a response to the answer on September 24,

2008 (Docket No. 17).  However, on that same date, Petitioner filed a request for leave to

withdraw procedurally barred claims I, II, IV, VII and IX from the petition (Docket No. 19).

This motion was granted on September 29, 2008.  This would leave for disposition only claims

III, V, VI, VIII and X.  Nevertheless, out of an abundance of caution, the Court will proceed to

review all of the claims presented in the petition.

Exhaustion

     The first issue that must be addressed by a federal district court when considering a

habeas corpus petition filed by a state prisoner is whether the prisoner has exhausted available

state court remedies as required by 28 U.S.C. §§ 2254(b) and (c).  The Antiterrorism and

Effective Death Penalty Act of 1996 (the AEDPA), provides that:

> (1) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears
> that--
>
> (A)  the applicant has exhausted the remedies available in the courts of the State;
> or
>
> (B)(I)  there is an absence of available State corrective process; or
>
> (ii)  circumstances exist that render such process ineffective to protect the rights
> of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits,
> notwithstanding the failure of the applicant to exhaust the remedies available in
> the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be
> estopped from reliance upon the requirement unless the State, through counsel,
> expressly waives the requirement.

28 U.S.C. § 2254(b).

     It is well settled that, as a matter of comity, the state should be provided with the first

opportunity to consider the claims of constitutional violations and to correct any errors

committed in its courts.  <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1981); <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973).  Accordingly, before a state prisoner's claims may be addressed by a federal habeas court, the constitutional issues must first have "been fairly presented to the state courts" for review.  <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)).  Both the factual and legal basis for the claim must have been presented to the state courts.  Thus, the Supreme Court held that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."  <u>Duncan v. Henry</u>, 513 U.S. 364, 366 (1995).

<u>Procedural Default</u>

The Court of Appeals has stated that:

> As a matter of comity and federalism, a federal court cannot rule on the merits of a habeas petitioner's claims when a state court has found such claims to be procedurally defaulted pursuant to an independent and adequate state procedural rule unless the petitioner shows cause and prejudice for the default.

<u>Kindler v. Horn</u>, 542 F.3d 70, 78 (3d Cir. 2008) (citing <u>Doctor v. Walters</u>, 96 F.3d 675, 683 (3d Cir. 1996)).  In addition, when habeas petitioners have not fairly presented their claims to the state courts and would be barred by a state procedural rule from seeking further relief, the claims cannot be reviewed because of this procedural default.  <u>Lines v. Larkins</u>, 208 F.3d 153, 160 (3d Cir. 2000) (citing <u>McCandless v. Vaughn</u>, 172 F.3d 255, 260 (3d Cir. 1999)).  In <u>Lines</u>, the petitioner had filed a direct appeal to the Superior Court and a petition for allowance of appeal in the Pennsylvania Supreme Court.  He then filed a PCRA petition and after it was denied, he appealed to the Pennsylvania Superior and Supreme Courts.  However, the Court of Appeals concluded that he had not "fairly presented" to the Pennsylvania courts any of the claims that he

8

was presenting in his habeas corpus petition.

The Court of Appeals did not affirm the district court's dismissal of the federal habeas corpus petition on the ground that Lines had failed to exhaust available state court remedies and that he should file another PCRA petition.  Rather, the court concluded that he had no more available state court remedies because the statute of limitations under the PCRA, 42 Pa. C.S. § 9545(b)(1), would prohibit him from filing any PCRA petition, including a second or subsequent petition, more than one year after the judgment becomes final unless certain exceptions are met, which did not apply to the case.  The court noted that the Pennsylvania Supreme Court had held in Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999), that the time restrictions under the PCRA are jurisdictional.  Id. at 164 & n.17.  The court concluded that "[w]hen exhaustion is futile because state relief is procedurally barred, federal courts may only reach the merits if the petitioner makes the standard showing of 'cause and prejudice' or establishes a fundamental miscarriage of justice."  Id. at 166 (citation omitted).  Because the petitioner failed to meet either exception to the procedural bar, all of his claims were procedurally barred from review and the court dismissed the petition with prejudice.  Id. at 169.

Respondents contend that: a) claims I and II are exhausted because they were presented to all levels of the Pennsylvania courts in Petitioner's PCRA petition and appeal therefrom; b) claims IV and VII are exhausted because they were presented to all levels of the Pennsylvania courts in Petitioner's direct appeal; and c) claims III, V, VI, VIII, IX and X are unexhausted and, because the time in which to raise them has expired, they are procedurally defaulted and barred from review.

Claims I and II are exhausted because they were presented to all levels of the Pennsylvania courts in Petitioner's PCRA petition and appeal therefrom, and claims IV and VII

are exhausted because they were presented to all levels of the Pennsylvania courts in Petitioner's direct appeal.

Claims III (prosecutorial misconduct) and VIII (counsel's failure to go over the appeal process and whether or not he wanted to appeal) were not raised in any state proceeding and were not presented to the state courts in any form.  Claims V (counsel's failure to object to testimony by Sue Virgili), VI (counsel's failure to call certain witnesses) and X (counsel's failure to argue that the sentence was harsh) were raised in his PCRA petition, but not on appeal to the Pennsylvania Superior Court.  Thus, they are unexhausted and, because the time in which to raise them has expired, procedurally defaulted and barred from review.  Claim IX (counsel's failure to preserve an issue for appeal) appears to be a restatement of claim I, which will be addressed on the merits below.  To the extent that Petitioner intends to raise a different issue, it was not presented to the state courts and it would therefore be unexhausted and procedurally barred from review.

Petitioner has not argued that he can demonstrate "cause" for his procedural defaults, that he suffered "prejudice" therefrom, or in the alternative that he will suffer a "fundamental miscarriage of justice" if these claims are not heard.  Moreover, he would not meet the standard necessary to satisfy either exception to the procedural default bar in any event.

The issue of cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Because Petitioner's counsel did not raise these issues or raised them inadequately, he cannot refer to any source external to the defense.  Thus, he cannot establish the existence of "cause" to excuse the procedural default.

Even where no cause or prejudice can be shown, a federal court may grant a writ of

habeas corpus where failure to hear the claim would result in a miscarriage of justice.  <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992).  A fundamental miscarriage of justice occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent.  <u>Murray</u>, 477 U.S. at 495-96; <u>Hull v. Freeman</u>, 991 F.2d 86, 91 n.3 (3d Cir. 1993).  To meet this standard, the prisoner must show a fair probability that, in light of all the evidence, including that claimed to have been illegally admitted and that claimed to have been wrongly excluded or which became available only after trial, the trier of fact would have entertained a reasonable doubt of his guilt.  <u>Sawyer</u>, 505 U.S. at 339 n. 5 (citing <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 n. 17 (1986)).  This exception is exceedingly narrow: "'To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.'  Given the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected.'"  <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)).

In this case, Petitioner has not met the high burden of demonstrating a fundamental miscarriage of justice.  Therefore, claims III, V, VI, VIII, IX and X are procedurally barred from review.  The remaining claims will be addressed on the merits.  However, claim IV does not present an issue cognizable in federal habeas corpus.

<u>Admission of photos</u>

In claim IV, Petitioner alleges that the trial court erred by allowing into the record inflammatory photos of the deceased infant, which were biased and prejudicial to him.  This claim was presented to the state courts as an evidentiary issue and was handled as such by the state courts.  On direct appeal, the Superior Court indicated that Petitioner:

argues that the photographs were unduly inflammatory because they were

11

colored, showed close-ups of the wounds, showed the use of "scientific instruments" on [Destiny], and because they were photographs of an infant. We disagree.

        In his statements to the police and to social services, [Wynn] admitted to shaking [Destiny] but stated that he had not shaken her hard and denied causing the bruising and bleeding in her mouth. Both in his statements and at trial, [he] proffered various alternate explanations for the bruises, including a car seat injury and an injury which occurred due to [Destiny's] use of a bouncer seat. [Wynn] further argued that the bleeding in [Destiny's] mouth was caused by her cutting herself with her nails. Given this defense, the photographs of the bruises and the bruise in [Destiny's] mouth were probative in proving that the both the location and types of bruising were not consistent with [Wynn's] explanations. Further, the photographs of the hemorrhaging in [Destiny's] eyes were probative in refuting [Wynn's] claim that he did not shake [Destiny] hard. Here, given the nature of [Destiny's] injuries and her small size, it appears unlikely that the jury would have been able to clearly see the injuries if the photographs were not in color and were not close-ups. Also, it is not apparent to this Court how one can see a photograph of a bruise inside the mouth or under the eyelids without some instrument being used to open the mouth and pull back the eyelids.

        Lastly, [Wynn] has pointed to nothing to support a claim that photographs of a murdered infant are per se inadmissible. See Commonwealth v. Brown, 567 Pa. 272, 287-88, 786 A.2d 961, 970-71 (2001) (noting that while enlarged and slide projected photographs of the "tortured and decayed" body of a small child were unpleasant, they were nonetheless properly admitted). The photographs here were far less graphic and disturbing than those found admissible in Brown. Further, given that the jury did not convict [Wynn] on the most serious charge, murder in the first degree, it is evident that the photographs did not unduly inflame the passions of the jury. Thus, for the reasons discussed above, we find that the trial court did not abuse its discretion in admitting the five photographs in question.

Wynn, 850 A.2d at 736.

        "Admissibility of evidence is a state law issue."  Wilson v. Vaughn, 533 F.3d 208, 213 (3d Cir. 2008) (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991)).  As the Supreme Court recently reiterated, "we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"  Waddington v. Sarausad, 129 S.Ct. 823, 832 n.5 (2009) (quoting Estelle, 502 U.S. at 67-68).  Thus, claim IV presents a state

law issue involving the admission of evidence and it is not reviewable in federal habeas corpus.

Facts of the Case

The Superior Court summarized the case as follows:

[Wynn] met [Destiny's] mother, [Shanea], when she was thirteen and he, seventeen. They were married three days after [Shanea's] sixteenth birthday. [Destiny] was born approximately thirteen months later, on September 30, 2000. At birth, [Destiny] exhibited a condition known as gastroschisis, her intestines developed outside her abdomen. Following her birth, she was immediately taken to Children's Hospital of Pittsburgh ("CHP"), where she remained until November 6, 2000. After [Destiny's] release from CHP, [Wynn], [Shanea], and [Destiny], initially moved in with [Wynn's] mother and stepfather, but then moved in with [Shanea's] paternal grandparents. However, they sometimes stayed with [Shanea's] mother, Kimberly Nakoneczny, and her boyfriend, Robert Hughes.

As part of her on-going post-surgical treatment, [Destiny] was seen by a visiting nurse three times a week. The last visit occurred on December 14, 2000, at which time [Destiny] was doing well and showed no signs of abuse or injury. On December 15, 2000, [Shanea] and [Destiny] were picked up by Ms. Nakoneczny and Mr. Hughes; the group then picked up [Wynn] at his place of employment at approximately 7:00 p.m. They drove to a mall, went their separate ways, and later met at a restaurant in the mall. At the restaurant, Mr. Hughes and [Wynn] each drank a "tall glass" of beer, Ms. Nakoneczny drank an alcoholic beverage, and [Shanea] drank a coke. While at the restaurant, the party was briefly joined by Mr. Hughes' daughter, Erin Hughes. Ms. Hughes played with [Destiny], who giggled and laughed. Ms. Hughes did not notice any bruises on the baby.

After leaving the mall, they briefly stopped at a gas station so that Mr. Hughes and [Wynn] could purchase beer. They then returned to the Hughes' residence. At approximately 10:00 p.m., Mr. Hughes, Ms. Nakoneczny, and [Shanea] went to the Riverside Inn to meet with a landlord about an apartment; [Wynn] remained at the Hughes' residence to babysit [Destiny]. Mr. Hughes, Ms. Nakoneczny, and [Shanea] remained at the Inn for approximately one hour, and then drove to the Landmark, where they remained until 12:00 or 12:30. Mr. Hughes and Ms. Nakoneczny dropped [Shanea] back at the Hughes' residence while they went to Rices Landing Athletic Club.

When [Shanea] went into the Hughes residence, she found [Wynn] attempting to feed [Destiny] a bottle of water, while blood was dripping out of [Destiny's] mouth. [Wynn] explained that he had been sleeping when "something" woke him up and he noticed that [Destiny] was bleeding from her

mouth. [Shanea] called 911 but was [too] upset to talk on the telephone, so [Wynn] spoke with the 911 operator. Emergency personnel who arrived at the residence continued to speak with [Wynn] because, while [Shanea] was too upset to be of assistance, [Wynn] was unnaturally calm and collected. Emergency personnel attempted to ascertain from [Wynn] what had happened to [Destiny] but his explanation was not consistent with the baby's symptoms. [Destiny] was transported by helicopter to CHP, where she died on December 18, 2002.

Wynn, 850 A.2d at 731-32 (footnote and record citations omitted).

Standard of Review

A petitioner is only entitled to federal habeas relief if he meets the requirements of 28

U.S.C. § 2254(d), which provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(d) "firmly establishes the state court decision as the starting point in habeas review." Hartey v. Vaughn, 186 F.3d 367, 371 (3d Cir. 1999). This provision governs not only pure issues of law, but mixed questions of law and fact such as whether counsel rendered ineffective assistance. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

The Supreme Court has held that, "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The Court has also held that

> the "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case.  In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced."  In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been "objectively unreasonable."

Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (other citations omitted)).  In other words, "the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citations omitted).

Section 2254(e) provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Cross-examination of Shanea Wynn

In claim VII, Petitioner alleges that his cross-examination of his wife, Shanea Wynn, was improperly restricted in that he was not allowed to ask her about the content of what he calls her pornographic website that, he contends, contradicted her testimony that she did not drink alcohol, did not smoke marijuana, was not known by an alias and her portrayal that she was a modest woman.  Respondents argue that this issue was presented to the state courts as a state law issue and, even construing it as a federal issue in terms of his rights under the confrontation clause, it fails because he is merely trying to challenge her general credibility.

15

The Superior Court held that Petitioner:

has failed to show that the proffered evidence was relevant. [Shanea], who was seventeen when [Destiny] was murdered and nineteen when she testified at the trial, testified generally about her relationship with [Wynn] and the timeline of events on December 15, 2000. She also testified that [Destiny] was healthy and had not been abused prior to being left alone with [Wynn] at approximately 10:00 p.m. on December 15, 2000. She stated that, when she returned home, [Destiny] was bleeding from the mouth and that [Wynn] stated that he had been asleep and when he woke up [Destiny] was bleeding. She said that [Wynn] had previously been a good father. She also testified about her interaction with emergency personnel and staff at CHP. Her testimony, almost in its entirety, was corroborated by that of other witnesses and by [Wynn's] own statements to police and social workers. [Wynn] has provided nothing which would show how information posted on a website some months after the events at issue, which, at most, demonstrated that [Shanea] had some body piercings, drank and used marijuana on occasion, and referred both to herself and to her sexuality in a crude manner, was relevant to her testimony at trial. Thus we find that the trial court did not abuse its discretion in finding that the proffered evidence was irrelevant.

[Wynn] also argues that the testimony was admissible under Pa. R.E. 608(a), which provides, in pertinent part, that: the credibility of a witness may be attacked or supported by evidence in the form of reputation as to character, but subject to the following limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness. Pa. R.E. 608(a). This Rule is consistent with prior Pennsylvania caselaw which states that a witness's truthfulness may be attacked by showing that he or she has a bad reputation for truth and veracity. Commonwealth v. Fowler, 434 Pa. Super. 148, 642 A.2d 517, 518 (1994) (internal citations and quotations omitted).

This Court can find nothing in the proffered evidence that demonstrated that [Shanea] had a bad reputation for truth and veracity. While [Wynn] argues that the information on the website directly contradicted some of [Shanea's] testimony, we find this to be a misstatement of the record. [Wynn] argues that [Shanea's] discussion of alcohol use on the website contradicts [Shanea's] testimony that she did not drink. However, our review of the record shows that [Shanea] did not testify that she did not drink, she testified that she drank occasionally and that she did not drink on the night of December 15, 2000. [Shanea's] testimony that she did not drink on the night of December 15, 2000, was corroborated by other witnesses, and there is nothing in the statement's [sic] on the website which would refute this testimony.[5]

[5]     [Wynn] also argues that [Shanea's] statements about marijuana use on the website contradict her testimony at trial.  However, we can find nothing in the record which shows that [Shanea] was ever asked about

marijuana use or ever testified about marijuana use, either generally or on the night in question.

[Wynn] also argues that the contents of the website concerning body piercings and sex refutes [Shanea's] modest demeanor on the witness stand and her portrayal of herself as a modest woman. However, this Court is in no position to review whether [Shanea's] demeanor on the stand was modest. [Shanea] never testified that she was a modest person and the only testimonial evidence that [Wynn] points to in support of this claim is [Shanea's] reluctance to answer a question about a gift, allegedly a piece of lingerie, that [Wynn] gave her on December 15, 2000. [Shanea] does not discuss this gift on the website and [Wynn] offers nothing to support of his belief that her postings on the website somehow contradicted her testimony about this gift at trial. We have thoroughly reviewed both [Shanea's] testimony and the proffered contents of the website and find that the trial did not abuse its discretion in concluding that the evidence was not admissible under Pa. R.E. 608(a).

<u>Wynn</u>, 850 A.2d at 733-35 (record citations omitted).

Thus, as an initial matter, it appears that this claim was argued to the state courts as one regarding the admissibility of evidence and that it was treated as such by them. As discussed above, it is not the province of a federal habeas court to review state evidentiary rulings.

Nevertheless, Petitioner's claim could be viewed as referring to his rights under the confrontation clause of the Sixth Amendment. Therefore, the Court will address the merits of this claim. As summarized by the Court of Appeals:

The constitutional nature of the right to question witnesses is well established. An accused's Sixth Amendment right "to be confronted with the witnesses against him" is "incorporated into the Fourteenth Amendment and therefore available in state proceedings." <u>Olden v. Kentucky</u>, 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). The right to confront witnesses includes the right to conduct reasonable cross-examination. <u>Id.</u> "Subject to 'the broad discretion of a trial judge to preclude repetitive and unduly harassing litigation ..., the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.' " <u>Id.</u> (quoting <u>Davis v. Alaska</u>, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)).

<u>Wright v. Vaughn</u>, 473 F.3d 85, 93 (3d Cir. 2006). However, the Supreme Court has held that a defendant demonstrates a violation of his rights under the confrontation clause by "showing that

17

he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness."  Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986).  "Courts after Davis and Van Arsdall have adhered to the distinction drawn by those cases and by Justice Stewart in his concurrence–that cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not."  Boggs v. Collins, 226 F.3d 728, 737 (6th Cir. 2000).

In this case, the line of questioning Petitioner was foreclosed from raising with his wife related to the issue of her general credibility, not bias, motive or prejudice.  That is, he was attempting to demonstrate that she was generally not truthful because she indicated that she did not drink or smoke marijuana, was not known by an alias and was a modest woman when her website allegedly suggested otherwise.  This issue does not raise a claim under the confrontation clause.

Moreover, even if it did, "[e]videntiary rulings in violation of the Confrontation Clause are subject to harmless error analysis."  Wright, 473 F.3d at 93 (citing Van Arsdall, 475 U.S. at 684).  The Supreme Court has held that, for purposes of collateral review, "the standard for determining whether habeas relief must be granted is whether [the trial court] error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  More recently, the Court held that, "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman [v. California, 386 U.S. 18 (1967)]."  Fry v. Pliler, 551 U.S. 112,

121-22 (2007).

Thus, Petitioner would have to show that, assuming the trial court's decision to curtail his cross-examination of Shanea constituted error, this error had a substantial and injurious effect or influence in determining the jury's verdict. This he has failed to do. The record contained substantial evidence that Destiny showed no signs of abuse prior to the night of December 15, 2000, that Destiny's death was caused by injuries inflicted by her last caretaker and that Petitioner was that last caretaker. Therefore, with respect to this claim, the petition should be denied.

Ineffective Assistance of Counsel

Petitioner's remaining claims (I and II) allege ineffective assistance of trial counsel. The Supreme Court:

> established the legal principles that govern claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. Id., at 687, 104 S.Ct. 2052. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Ibid.

Wiggins, 539 U.S. at 521.

To satisfy the second prong of counsel ineffectiveness, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 534 (quoting Strickland, 466 U.S. at 694.) The Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel

claims is not contrary to <u>Strickland</u>.  <u>Werts</u>, 228 F.3d at 204.  Thus, the relevant question is whether the decisions of the Pennsylvania courts involve an unreasonable application of <u>Strickland</u>.  <u>Jacobs v. Horn</u>, 395 F.3d 92, 106 n.9 (3d Cir. 2005).  <u>See also</u> <u>Taylor v. Horn</u>, 504 F.3d 416, 430 (3d Cir. 2007).[2]

The question is not whether the defense was free from errors of judgment, but whether defense counsel exercised the customary skill and knowledge that normally prevailed at the time and place.  <u>Strickland</u>, 466 U.S. at 689.  "We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  <u>Wiggins</u>, 539 U.S. at 521 (quoting <u>Strickland</u>, 466 U.S. at 688).

<u>Failure to preserve issue of presentation of photos</u>

In claim I, Petitioner argues that trial counsel was ineffective for failing to properly preserve the issue of the manner in which the photographs were displayed.  In his direct appeal, he challenged the admission of the photographs, and the Superior Court addressed this issue on the merits.  However, as noted above, the Superior Court stated that he did not include the issue of the manner in which the photographs were displayed in his Rule 1925(b) statement and the issue was not addressed in the trial court's opinion.  Therefore, the Superior Court concluded that the issue regarding the manner of display was waived.  <u>Wynn</u>, 850 A.2d at 735-36.

Thereafter, Petitioner presented the issue of trial counsel's failure to preserve the issue of the manner in which the photographs were displayed to the PCRA court.  That court stated as

---

[2]     Although Respondents suggest in passing that Petitioner did not present his ineffective assistance of counsel claims as federal claims, as established in the text, the Pennsylvania standard is consistent with the federal standard as articulated in <u>Strickland</u>.

follows:

> The parties stipulated at the time of trial for purposes of appellate review that the projected photographs ranged in size from 28 by 39 inches to 37 by 59 inches. With the screen placed some 15 feet away from the jury box, the photographs viewed were not substantially larger illustrations than if the jury had been holding the photograph exhibit approximately 10 inches from their eyes for viewing. This Court decided that displaying the pictures upon the screen was not more prejudicial than the juror personally observing the photograph, which coincidentally was the evidence that the jury had at the time of deliberation. Further, the ease with which the jurors were able to follow the testimony of the witness explaining each exhibit was preferable over the witness holding up a photograph and explaining their testimony to jurors only to have that photograph published to one juror at a time without the explanation of the witness as they viewed the photograph. A trial judge has the responsibility of conducting a trial in a manner in which the jurors have the full benefit of understanding the testimony of each witness so long as neither of the parties are unduly prejudiced by the procedure.

(PCRA Ct. Op. at 7.)

> In reviewing this claim, the Superior Court stated as follows:

> Under these circumstances, because the projected images of the photographs were no more inflammatory or prejudicial than the photographs themselves, which we have already ruled were admissible, we agree with the trial court that Wynn's claim with respect to this issue lacked merit, and that he thus failed to establish his counsel's ineffectiveness in this regard.

(Super. Ct. Op. PCRA Appeal at 4) (footnote omitted).

As noted above, the issue of the admission of the photographs is a state law evidentiary issue not reviewable in federal habeas corpus. With respect to the issue of the manner in which the photographs were presented, the state courts concluded that projecting the photographs on the screen was essentially equivalent to the photographs being held by the jury members approximately 10 inches from their eyes for viewing, and Petitioner has not presented clear and convincing evidence to demonstrate that this factual determination should not be presumed correct. Thus, the state courts determined that the manner in which the photographs were

displayed was not inflammatory or prejudicial to him.  Counsel cannot be ineffective for failing

to raise a meritless claim.  Strickland, 466 U.S. at 691-92.  Petitioner has not demonstrated that

the Superior Court's decision was an unreasonable application of Strickland.  Therefore, as to

this claim, the petition will be denied.

Failure to object to testimony re abuse and anger management

In claim II, Petitioner argues that his trial counsel was ineffective for failing to object to

the admission of testimony by Kim Metzger, the visiting home nurse, which was elicited on

redirect examination and which he claims was highly prejudicial and immaterial.  Metzger

testified that Petitioner had told her that he had been abused as a child and had taken anger

management classes.  In fact, Petitioner's counsel did object to the admission of this testimony,

albeit for a different reason.[3]  However, he did not object to this testimony as being prejudicial

and immaterial.

At the PCRA hearing, Attorney Knorr testified that he "didn't really think that was

terribly negative with respect to [his] case, it was part of the overall background that [he] had,

and if anything I felt it could be argued as mitigating with respect to his background."  (PCRA

Hr'g at 6.)  When asked if he thought the testimony was highly prejudicial in that it told the jury

that Petitioner had a bad temper and was more likely to intentionally abuse his children,

Attorney Knorr responded "I didn't view it that way."  (Id. at 7.)

The Superior Court stated that:

we do not find Metzger's testimony [about him being abused as a child], or her
testimony about Wynn attending anger management classes, to be unduly
prejudicial, especially since Wynn was facing a first-degree murder charge and
this evidence was potentially mitigating.  Accordingly, we agree with the PCRA

---

[3]        He argued that it was beyond the scope of cross-examination.  (T.T. at 384.)

court that Wynn's ineffectiveness claim on this point lacks merit.  Moreover, as the PCRA court concluded, Wynn's trial counsel had a reasonable basis for not objecting to the above-referenced testimony in light of its mitigating nature. Wynn's ineffectiveness claim therefore fails on this basis as well.

(Super. Ct. Op. PCRA Appeal at 6) (footnotes omitted).

The Court of Appeals has stated that "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better."  Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 466 U.S. at 689).  Petitioner has not demonstrated that the Superior Court's conclusion that trial counsel had a reasonable basis for not objecting to the testimony in light of its mitigating nature was an unreasonable application of Strickland.  Therefore, as to this claim, the petition will be denied.

Certificate of Appealability

The decision whether to grant or deny a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals."  Barefoot v. Estelle, 463 U.S. 880, 893 (1983).  If a certificate of appealability is granted, the Court of Appeals must consider the merits of the appeal.  However, when the district court denies a certificate of appealability, the Court of Appeals can still grant one if it deems it appropriate.  28 U.S.C. § 2253.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This petition does not present a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability will be denied.

An appropriate order follows.

23

LISA PUPO LENIHAN
U.S. Magistrate Judge

Dated: January 13, 2010

cc:    Chad W. Wynn
      FD-3805
      SCI Somerset
      1600 Walters Mill Road
      Somerset, PA 15510

      Counsel of record